IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE R., individually and on behalf of A.W., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BLUE CROSS AND BLUE SHIELD OF ILLINOIS, et al., | ) ) ) |
| Defendants. | ) ) |

No. 24-cv-13112

Judge Andrea R. Wood

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie R., an employee of The Boeing Company ("Boeing"), participates in the Boeing Company Consolidated Health and Welfare Benefit Plan (Plan 635) ("Plan"). Because her minor son, Plaintiff A.W., was dealing with mental health and substance abuse issues, Stephanie R. sent him for treatment at Wingate Wilderness Therapy ("Wingate"), an outdoor behavior health treatment facility located in Utah. When Stephanie R. subsequently submitted a claim for A.W.'s treatment to Blue Cross Blue Shield of Illinois ("BCBS"), the company with which Boeing contracted to serve as the Plan's service representative, BCBS denied her claim, citing the Plan's exclusion for "Wilderness Programs" as the basis for its denial. Stephanie R. contends that her claim was wrongfully denied and therefore brings the present action on behalf of herself and A.W., asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and the Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1132(a)(3), against Defendants BCBS, Boeing, The Employee Benefit Plans Committee, and the Plan. Now, Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 21.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

**BACKGROUND**

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

Stephanie R. is an employee of Boeing. (Compl. ¶ 2, Dkt. No. 1.) As part of her employment, Stephanie R. is a participant in the Plan. (*Id.* ¶ 3.) The Plan is a welfare benefits plan self-insured by Boeing. (*Id.* ¶¶ 8–9.) While the Plan is administered by the Employee Benefit Plans Committee, a department within Boeing, Boeing contracts with BCBS to serve as the Plan's service representative and handle day-to-day administration of the Plan. (*Id.* ¶¶ 6–7, 9, 15.) BCBS's responsibilities include making benefit decisions, paying claims, and processing benefit claims and appeals. (*Id.* ¶¶ 7, 9, 15.) The official summary plan description for the Plan is set out in Boeing's Health Care Plans booklet ("Plan Booklet") and its Advantage+ Health Plan Supplement booklet ("Supplement Booklet"). (*Id.* ¶¶ 13–14.) Generally, the Plan provides coverage for services and supplies that are "Medically necessary to diagnose or treat a nonoccupational accidental injury or illness" or "Medically appropriate for certain preventative care services and other conditions." (*Id.* ¶¶ 16–17.) In addition, both mental health treatment and substance use disorder treatment are covered under the Plan. (*Id.* ¶¶ 18–20, 28.) The Plan contains an express exclusion for "wilderness programs," but neither the Plan Booklet nor the Supplement Booklet defines that term. (*Id.* ¶ 30.)

Due to her son's diagnoses of severe cannabis use disorder, attention-deficit/hyperactivity disorder, and unspecified neurodevelopmental disorder, Stephanie R. arranged for him to receive treatment at Wingate. (*Id.* ¶¶ 31–32.) Wingate is an outdoor behavioral health treatment facility located in Kanab, Utah, licensed by the State of Utah as an outdoor youth program. (*Id.* ¶ 33);

2

*see also* Utah Admin. Code R501-8-1 *et seq.* Its services include a residential outdoor therapy program for adolescent boys suffering from mental health and addiction issues. (Compl. ¶¶ 34, 36.) Because its services are more intensive than outpatient therapy but less intensive than acute hospitalization, Wingate qualifies as an intermediate or sub-acute behavioral health facility. (*Id.* ¶ 35.)

A.W. received treatment at Wingate between October 28, 2022, and January 2, 2023, which resulted in significant improvement with respect to each of his diagnosed conditions. (*Id.* ¶¶ 32, 37.) Wingate charged $40,870 for its services, for which Stephanie R. submitted a claim to BCBS. (*Id.* ¶ 38.) However, BCBS denied Stephanie's claim with an Explanation of Benefits stating that Wingate's services were "excluded under [her] Health Care Plan." (*Id.* ¶¶ 40, 42.) Stephanie R. then filed an appeal of that denial. (*Id.* ¶ 43.) In a letter explaining its denial of her appeal, BCBS explained that the Plan "specifically excludes coverage for wilderness programs." (*Id.* ¶ 46.) Stephanie R. subsequently filed a second appeal of BCBS's denial of coverage. (*Id.* ¶¶ 47–56.) Again, BCBS denied her appeal, citing the Plan's wilderness programs exclusion. (*Id.* ¶¶ 57, 62.)

After exhausting her administrative appeals, Stephanie R. brought the present action on behalf herself and A.W. Plaintiffs' complaint asserts a claim for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). In addition, the complaint sets forth a claim alleging that the denial of coverage for A.W.'s treatment at Wingate violated the Parity Act, 29 U.S.C. § 1132(a)(3).

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

3

pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Defendants ask this Court to dismiss both of the complaint's claims.

###    I.    Denial of Benefits

Under ERISA, 29 U.S.C. § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Here, Plaintiffs contend that A.W. received medically necessary treatment for his mental health and substance abuse issues during his time at Wingate. Plaintiffs assert that such services are covered under the Plan, and therefore it was improper for Defendants to deny coverage based on the Plan's exclusion of "wilderness programs."

Where the operative plan grants the plan administrator discretionary authority to determine eligibility for benefits, the Court must review the challenged decision under the arbitrary and capricious standard. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). That is the case here, as the Plan states that "[t]he decisions of [BCBS] are final and binding" (Def.'s Mot. to Dismiss, Ex. A, Plan Booklet at 18, Dkt. No. 21-1)[1], language that has been found to confer discretion to a plan administrator. *Daill v. Sheet*

---

[1] While the booklets comprising the official plan summary description are not attached to the complaint, because various provisions are referenced in the complaint and give rise to the asserted claims, they are incorporated by reference and are properly considered in connection with Defendants' Rule 12(b)(6) motion. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

4

*Metal Workers' Loc. 73 Pension Fund*, 100 F.3d 62, 67 (7th Cir. 1996) ("If a . . . plan gives the plan's trustees broad discretion to make final and binding decisions with respect to the plan's application and interpretation . . . we will not upset the trustees' decision unless it is arbitrary and capricious."). The arbitrary and capricious standard has been described as the "least demanding form of judicial review" and precludes the Court from setting aside "a denial of benefits based on any reasonable interpretation of the plan." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). Put differently, the denial of benefits will be overturned only if the decision is "completely unreasonable." *Id.* Nonetheless, the Court's deference does not require it to be a mere "rubber stamp." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009). "In some cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

Although the term "wilderness programs" is not defined in the Plan, Plaintiffs claim that it cannot plausibly be interpreted to encompass Wingate's mental health and substance abuse treatment simply because those services included an outdoor component. Without a defined meaning under the Plan, the Court finds that the term wilderness program is at least ambiguous as to whether it applies to Wingate's services. Such ambiguity makes the deference afforded to the Plan's administrator "especially applicable . . . for that is precisely when the administrator exercises [its] grant of discretion." *Reg-Ellen*, 423 F.3d at 662. And here, the Court finds that BCBS reasonably determined that Wingate's services fell within the wilderness-programs exclusion.

As an initial matter, the fact that the program is named Wingate ***Wilderness Therapy*** strongly indicates that Wingate can reasonably described as a wilderness program.

5

Further, as a Utah-licensed outdoor youth program, "a 24-hour outdoor group living environment" is the defining characteristic of its services. Utah Code Ann. § 26B-2-101(41). As such, Utah subjects Wingate to a different regulatory regime than an ordinary residential treatment center. *Compare* Utah Admin. Code R501-8-1 *et seq.* (outdoor youth programs), *with* Utah Admin. Code R501-19-1 *et seq.* (residential treatment programs). Given the way that Wingate's outdoor component distinguishes its services from other forms of mental health and substance abuse treatment, the Court does not believe that it was arbitrary and capricious for Defendants to conclude that it constituted a wilderness program. Numerous other district courts that have addressed the matter have likewise concluded that the term wilderness program encompasses state-licensed outdoor youth programs. *E.g.*, *Peter M. v. Aetna Health & Life Ins. Co.*, 554 F. Supp. 3d 1216, 1225–26 (D. Utah. 2021) (interpreting the undefined term "wilderness treatment programs"); *Roy C. v. Aetna Life Ins. Co.*, No. 2:17cv1216, 2018 WL 4511972, at *2 (D. Utah Sept. 20, 2018); *Vorpahl v. Harvard Pilgram Health Ins. Co.*, No. 17-cv-108444-DJC, 2018 WL 3518511, at *3 (D. Mass. July 20, 2018). *But see Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1173–74 (D. Utah 2019) (holding that the insurer was arbitrary and capricious in interpretating a "wilderness camp" exclusion to extend to services provided by an outdoor youth program). Consequently, Plaintiffs' claim for recovery of benefits pursuant to § 1132(a)(1)(B) is dismissed.

**II.     Parity Act**

To the extent Defendants properly denied coverage for A.W.'s treatment at Wingate as an excluded wilderness program, Plaintiffs go on to argue that such an exclusion violates the Parity Act. "Congress passed the Parity Act to ensure that health insurance plans would confer benefits for mental health and substance abuse disorders at parity with medical and surgical benefits."

*C.M. v. Health Care Serv. Corp.*, No. 24-cv-02122, 2025 WL 933847, at *3 (N.D. Ill. Mar. 27, 2025). Thus, the Parity Act provides as follows:

> [A] group health plan . . . that provides both medical and surgical benefits and mental health or substance use disorder benefits . . . shall ensure that . . . the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii). For purposes of the Parity Act, "[t]he term 'treatment limitation' includes limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id.* § 1185a(a)(3)(B)(iii). Its implementing regulations further elaborate that treatment limitations "include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations . . . , which otherwise limit the scope or duration of benefits for treatment under a plan." 29 C.F.R. § 2590.712(a)(2). Some examples of nonquantitative limitations on mental health or substance abuse disorder benefits include "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* § 2590.712(c)(4)(ii)(H).

Although the Seventh Circuit has not yet addressed a Parity Act claim, courts in this District have adopted a test that requires a plaintiff to show the following four elements:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared.

7

*Brian W. v. Health Care Serv. Corp.*, No. 24 CV 2168, 2025 WL 306365, at *6 (N.D. Ill. Jan. 27, 2025). In this case, there is no dispute that the Plan offers both medical and surgical benefits as well as mental health and substance abuse disorder benefits and is subject to the Parity Act. And, according to Plaintiffs, Defendants' denial of coverage for A.W.'s treatment at Wingate based on the wilderness-programs exclusion amounts to a nonquantitative limitation applicable only to treatment for mental health and substance abuse disorder. In particular, Plaintiffs contend that the wilderness-programs exclusion imposes a limitation on the geographic location and type of facility that provides mental health and substance abuse disorder treatment that does not apply to analogous medical or surgical services.

    The Court rejects Defendants' contention that Plaintiffs rely solely on conclusory allegations in support of their Parity Act claim. Generally, at the motion to dismiss stage, district courts ask only whether "the plaintiff plausibly alleged that their health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical or surgical services." *C.M.*, 2025 WL 933847, at *3. Plaintiffs' allegations here suffice. At bottom, the complaint alleges that Defendants invoked the wilderness-programs exclusion to deny coverage for services A.W. received at an intermediate mental health facility and that no similar restriction applies to analogous medical or surgical services—namely, services provided at skilled nursing facilities and inpatient rehabilitation facilities. Further, the complaint alleges that the wilderness-programs exclusion amounts to a nonquantitative limitation on mental health and substance abuse disorder treatment based on either facility type or geographic location. Such allegations are not threadbare legal conclusions and suffice to support a plausible claim. *See, e.g.*, *Candace B. v. Blue Cross*, No. 2:19-cv-00039, 2020 WL 1474919, at *7 (D. Utah Mar. 26, 2020) ("Plaintiffs have identified the wilderness program exclusion as

8

applying to intermediate level mental health and substance abuse treatment but not to analogous intermediate level medical/surgical treatment. Therefore, Plaintiffs have adequately pleaded a facial Parity Act challenge with respect to the Plan.").

Defendants also contend that Plaintiffs fail to state a viable Parity Act claim because the wilderness-programs exclusion is equally applicable in the medical and surgical context. It is true that there is no language in the Plan that purports to limit the wilderness-program exclusion only to mental health and substance abuse disorder treatment. Rather, the wilderness-programs exclusion appears in a list of various "Other Medical Exclusions," many of which apply equally to medical or surgical benefits or only apply to medical or surgical benefits. (*See* Defs.' Mot. to Dismiss, Ex. B, Supplement Booklet at 40–41, Dkt. No. 21-1.) Some district courts have found Parity Act violations inadequate where the language of a wilderness-program exclusion is facially neutral such that it "applies equally to mental health/substance abuse treatment and medical/surgical treatment." *Peter M.*, 554 F. Supp. 3d at 1227–28. Yet other district courts have observed that, "given that it is not apparent how a categorical wilderness therapy exclusion could be applied to medical/surgical benefits, applying such a standard at the pleading stage will likely lead to a nonsensical result that is antithetical to the statutory purpose of the Parity Act." *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 258 (S.D.N.Y. 2018) (internal quotation marks omitted); *see also Michael D.*, 369 F. Supp. 3d at 1175 ("[I]n practice, wilderness camp exclusions have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of the limitation is that it imposes a limit on mental health treatment that does not apply to medical or surgical treatment.").

The Court agrees that the apparent facial neutrality of the wilderness-programs exclusion does not defeat a potential Parity Act claim. Indeed, several district courts have observed that

9

"the Parity Act broadly prohibits discriminatory 'processes, strategies, evidentiary standards, or other factors' just as much as it proscribes facial disparities in coverage." *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1235 (D. Utah 2019) (quoting 29 C.F.R. § 2590.712(c)(4)(i)). Thus, in considering wilderness-programs exclusions, those courts have "reasoned that the relevant inquiry [is] not whether coverage of both [mental health and medical] treatment would be excluded in a wilderness program setting, because plaintiffs' claim[s] appeared to concern the process and factors by which the nonquantitative treatment limitation could even be applied to medical/surgical benefits." *Gallagher*, 339 F. Supp. 3d at 257 (internal quotation marks omitted). Instead, at the pleading stage, the "relevant comparison [is] whether the Plan has chosen to provide benefits for skilled nursing facilities and rehabilitation centers for medical/surgical patients, but chosen to deny benefits to those with mental health conditions who seek coverage for a residential treatment center offering wilderness therapy." *Id.* at 258. Under that standard, Plaintiffs' adequately state a Parity Act claim by alleging that Defendants have denied coverage for A.W.'s mental health and substance abuse disorder treatment based on the fact that Wingate provided those services in an outdoor environment, even as "[t]he Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location [or] facility type." (Compl. ¶ 83); *see, e.g.*, *Michael W.*, 420 F. Supp. 3d at 1238 ("Plaintiffs have plausibly pleaded that, for outdoor behavior treatment programs, which in practice are only available to those seeking mental health/substance abuse care, Defendants' policy of excluding outdoor behavior therapy from coverage is because of more restrictive criteria that is not applied to analogous medical/surgical care."); *A.Z. ex rel. E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1082 (W.D. Wash. 2018) ("Such a categorical exclusion [of coverage for medically necessary services at outdoor and wilderness behavioral healthcare

10

programs] is itself a form of 'process' falling within 29 C.F.R. § 2590.712(c)(4)(i) that qualifies as a discriminatory limitation.").

Further, insofar as the wilderness-programs exclusion could impose meaningful restrictions on analogous forms of medical or surgical care, Plaintiffs allege that Defendants nonetheless violate the Parity Act by applying the exclusion disproportionately toward mental health and substance abuse disorder treatments. Such an "'as-applied' challenge requires plaintiffs to identify facially neutral plan terms that are applied differently or more restrictively in practice on mental health or substance abuse disorder treatments." *C.M.*, 2025 WL 933847, at *3. Here, Plaintiffs allege that Stephanie R., in appealing Defendants' denial of coverage, requested that BCBS perform a comparative parity analysis and provide her that information but it declined to do so. (Compl. ¶¶ 43, 49, 84.) In such circumstances, a plaintiff is not required to plead specifics on how a defendant disparately applies the standard since "more specific information is not within [the plaintiff's] possession, and further discovery and potentially expert testimony will be required to prove or disprove whether the [particular standard] is indeed applied differently to mental health and substance abuse services." *Smith v. Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 390 (S.D. Ind. 2021); *see also T.E. v. Anthem Blue Cross & Blue Shield*, No. 3:22-cv-202-DJH-LLK, 2023 WL 2634059, at *6 (W.D. Ky. Mar. 24, 2023) ("The trend towards allowing Parity Act claims to proceed to discovery recognizes that information about how insurance companies process treatment limitations will often be in the hands of the insurers alone."). At this stage, it is enough that Plaintiffs have alleged that even though Wingate is a licensed behavioral healthcare provider, Defendants' denial treats its services as akin to recreational, "[t]herapeutic camping." (Compl. ¶¶ 33–36, 51, 62.) Those allegations support "the reasonable inference" that such grouping of wilderness therapy with programs that are primarily

recreational "is not done with medical/surgical services provided in other residential settings" and therefore state a claim for an as-applied Parity Act challenge. *Vorpahl*, 2018 WL 3518511, at *4.

In short, Plaintiffs have adequately alleged that the wilderness-program exclusion imposes a more restrictive limitation on mental health and substance abuse disorder treatments than for comparable medical or surgical treatments. For that reason, their Parity Act claim survives Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 21) is granted in part and denied in part. Specifically, the motion is granted with respect to Plaintiffs' ERISA § 1132(a)(1)(B) claim, which is dismissed. The motion is otherwise denied.

ENTERED:

Dated: December 16, 2025

_____
Andrea R. Wood
United States District Judge